Good morning, Your Honors. May it please the Court, Stan Greenberg for Mr. Cooper. I'd like to use seven minutes, if I couldn't say three minutes, for my rebuttal. I'd like to address and emphasize and really underscore, if I could, two issues which I think are inextricably intertwined, and that is the claim of insufficient evidence with respect to the false impersonation and also the failure to give theory of the defense instructions. I want to start with the fact that I believe Mr. Cooper's conduct was authorized by law, and that's the statute that we cited and requested an instruction on 16 U.S.C. 558A, which allows the people who participate in the volunteer program of the Forest Service can participate in any activities that the Forest Service people can participate in. This is the public authority issue? Yes. But doesn't it turn on whether the manager of the carpool had the authority? In part, and let me explain why I said that. The law on so-called public authority, which sometimes there's a side issue there called innocent intent, is in kind of a muddled state, I think, in this circuit, and this Court has addressed that in the Baptista-Rodriguez case that we cited. But he did have authority, and Mr. Cooper had a specific authority. Mr. Cooper, as a volunteer, had authority under 16 U.S.C. 558A. There was no question, it was undisputed, that he was solicited to be a volunteer and was provided the car by the fleet manager. But he had authority to do what? I mean, you can be a volunteer for certain purposes but not for other purposes. Right. Well, the important thing for the purpose of this argument that I was trying to address is what would seem to be important to the Court, and the reason he denied the Rule 29 motion was that Mr. Cooper was driving the Forest Service vehicle and therefore falsely impersonating a Forest Service officer. And our argument is, no, he had authority to do that. He was solicited by the fleet manager. It was given to him. The fleet manager had some restrictions on regulations that should not have allowed him to give that to a civilian volunteer. But those regulations are binding on Mr. Cooper. But Mr. Allgaier also testified that he didn't intend to give the car to Mr. Cooper for any purpose other than to move it around to establish a physical presence by virtue of the car. In other words, Mr. Cooper's presence was irrelevant to what Mr. Allgaier thought was important, that is, the presence of a car. And it turns out that Mr. Cooper, there was testimony from other people that Mr. Cooper did a good deal more than just move the car. That's true. And that gets to Mr. Cooper's state of mind, because he believed that he was keeping track of people going in and out of the Forest Service in case of a fire or mischief. He was providing assistance to visitors, providing maps and directions. Well, he may have thought that he was doing that, and probably he was doing that, but he didn't have authority to do that. It doesn't mean he didn't have apparent authority to do that. Well, to the extent that Forest Service ---- He didn't testify that he was authorized to do that. To the extent that, Your Honor, to the extent that Forest Service officers had the power in the Forest Service area to stop and talk and get identification from visitors, then Mr. Cooper did under 16 U.S.C. 558A, because that place says he can do whatever activities Forest Service officers can do. So I think he did have authority. So you are arguing for actual authority? Yes. You were talking about apparent authority. Well, he had both, but he had ---- Well, no, they're very different concepts. They're almost mutually exclusive concepts. We argued below, and the argument here is he had actual authority. I thought you were arguing for apparent authority. You are now arguing for actual authority. We were all ---- it was always his position he had actual authority. Does that mean he had authority to arrest people? He didn't arrest anybody. I didn't say that he did. Oh. Did he have authority to arrest people? I would think not. Why not? Well, you just told us he had authority to do whatever the Forest Service officers and there are Forest Service officers who can arrest people. I don't think ---- I don't believe those Forest Service officers had the authority to arrest. Okay. Well, Mr. Allgaier testified that there were, I think, two law enforcement officials, right? And they would have had authority to arrest people. Mr. Allgaier himself didn't have authority to arrest people, but others did. So now we need to know how much authority could Mr. Allgaier have given Mr. Cooper. Well, you're saying what Forest Service officers would have the authority to do within the regulations of their job, you're saying Allgaier didn't have the authority to arrest because he was a fleet manager, but other people would. So ---- Well, you're the one who made the statement that he was authorized to do whatever Forest Service people were entitled to do. That's a broad range of people, and it includes a couple of law enforcement officials who may stop people and may, in appropriate circumstances, issue arrests. I want to know whether your contention that Mr. Cooper had the same authority as Forest Service people includes the law enforcement officials. I think that the line would be drawn there because the ability to make arrests by people who are law enforcement officials requires as a prerequisite law enforcement training. So, no, he didn't have the law enforcement training, but all the other activities ---- What statutory language are you relying on? I'm sorry? What statutory language are you relying on? 16 U.S.C. 558A. I'm looking at it. What language? What actual words? Oh, I'm looking at the language. What actual words? I'm looking at the language. It says the Secretary of Agriculture is authorized to use the service of individuals without compensation as volunteers for, in aid of interpretive functions, visitor services, conservation measures and development, or other activities in and related to areas administrated by the Secretary through the Forest Service. So there's no restrictions in the statute. This is an authority. This is an authorization for the Secretary to do something. What does it give your client authority to do anything? Well, at the beginning it says the Secretary ---- The Secretary still has to authorize. The Secretary is authorized to recruit, train and accept those volunteers for those purposes. He certainly is. He certainly is. But it doesn't mean that everybody that walks in the Forest Service is a volunteer for all purposes. Where is the evidence that, in fact, the Secretary exercises authority vis-à-vis your client? I think that language says it, Your Honor. I don't know how that could be ---- I don't think that could be ---- I don't know how that could be clearer. Well, this delegates to the Secretary of Agriculture the authority to accept services here. That doesn't mean that the Secretary is commanded to accept services or that people who volunteer are competent to do all of those things. One might be accepted in the volunteer program to be sort of an interpretive function, but not do conservation work. And where is the Secretary's action accepting this anyway? Where is the Secretary's action? Did the Secretary himself authorize this? No. He acts under the authority of his office. It has to be somebody who is authorized to act on the Secretary's behalf in accepting volunteer services. Through the Forest Service. That's what it says. Well, have you shown that anybody has that authority delegated from the Secretary? Well, Mr. Algwier said he thought he had the authority, and he ---- I'm sorry? Mr. Algwier said he thought he had the authority. He was the one who recruited Mr. Cooper as a volunteer. I mean, the fact that he thinks he has the authority means nothing. Well, authority is delegated. You remember Federal Crop Insurance v. Merrill? It was around when you and I went to law school, so. I'm sorry, I didn't hear this. Federal Crop Insurance v. Merrill. It is a case where the guy calls the Federal Crop Insurance and says, is winter wheat insured? And the guy at the other end of the line says, yes, it is. He relies on it and goes to the Supreme Court. The Supreme Court says, no, you've got to have somebody with actual authority. The fact that the guy who runs the carpool in the Forest Service thinks he has authority to accept volunteer services, to appoint volunteers, means nothing. You actually have to show that somebody, that there is somebody with actual authority, delegated from the secretary to accept that, and that that person, in fact, accepted the services. And the scope to which no, no, there's nothing like that in the record. Well, the secondary argument, Your Honor, was the innocent intent concept, where he should have got instruction on good faith. But there was no proof at all that anybody told him he should do anything other than move cars around. There was nothing whatsoever. He was supposed to be driving cars and shuttling them around. He was not supposed to talk to people. No, he was not authorized to talk to people, to get information, to keep records. I don't think that means he couldn't have inferred from what he was being asked to do that he could have done that, and that's where good faith comes in, his theory of defense. Did he thought that? My light is gone. I didn't mean to talk so long. Okay, thank you. We'll hear from the government. May it please the Court, Ilana Arntzen on behalf of the United States. The district court here did not abuse its discretion in declining to give a public authority or good faith instruction because, as some of the prior questioning indicated, there was simply no factual basis, because there was no indication that Mr. Eluire had any actual authority to either give the law enforcement vehicle to the defendant or that he, in fact, authorized him to do any of the acts that were the basis of this charge. Counsel, this is a very sympathetic defendant. He's a retired police officer. He volunteers his time to the Forest Service to help in an effort which he reasonably believes to be Forest Service policy by agreeing to drive this truck around. Up to that point, any problem? If that is all he had done, I think there would probably be a failure of proof on the second element of impersonation, because this is a two-element defense. It's not enough to impersonate. He also would have to act as such, and that would require that he, you know, commit some kind of act consistent with it, seeking to cause the deceived person to change their course of conduct, to do something they wouldn't have done but for the defendant's conduct. But as you concede, then, that the defendant did have the authority to drive the truck around and be seen as Mr. Algueri asked him to do. Well, what the evidence at trial established he had the authority to do was move the truck around the campground. Yeah, that's what I'm saying. That is not where he drove it. He drove it around. I don't think you're answering my question. Do you concede that up to that stage, in other words, before he started asking for IDs and that sort of thing, in terms of simply driving the truck around so it would be a visible impression of law enforcement, up to that point, no problem? Well, he did not have actual authority to do that because Mr. Algueri didn't have actual authority and therefore couldn't confer it on him. Well, what about apparent authority? He's a retired police officer. He understands that there's a law enforcement need. He agrees as a volunteer to do this on an unpaid basis. What's wrong with that? Well, apparent authority relates to the other sort of permutation, I guess, of innocent intent that the defendant relies on. And whether that defense is available, of course, depends upon the elements of the  offense. Here, that is not the case because this Court held in Thompson v. McGill that Section 912 does not have a separate intent to defraud element and there is no affirmative defense of lack of intent to defraud. So that defense would not be available unless it negated one of the elements of the offense. And here it doesn't because there is no intent to defraud element. So we have, first, no actual authority because all of the evidence at trial showed that Mr. Algueri did not have the authority to give that law enforcement vehicle to the defendant. The regulations provided that law enforcement vehicles can only be driven by law enforcement. The volunteer regulations provided that volunteers cannot engage in law enforcement.  Could you have charged him with theft? Well, Mr. Algueri was charged with conversion, and the defendant was charged in the conspiracy count with conspiring to convert. But the jury acquitted on the conspiracy count. Mr. Cooper was not charged with a substantive count of conversion. Only Mr. Algueri was charged in that count. If Mr. Cooper had been loaned a Forest Service truck that didn't have law enforcement on it, would that have been violated any rules? Well, you know, the evidence at trial really focused solely on the fact that this was a law enforcement vehicle. It does appear that if it was a Forest Service vehicle that Mr. Algueri might have had the authority to assign that. But he certainly didn't have the authority to authorize, nor did he actually authorize the defendant to do the actions that were the basis of the offense, which was stopping visitors in the forest, flagging them down, and asking for their personal information and identifying information. Mr. Algueri said, I did not give him authority to do that, and, in fact, I wouldn't have given him the vehicle if I thought that's what he was going to do with it. But he did give him the vehicle and gave him the authority, whatever authority he had, to drive the vehicle around, did he not? And isn't he entitled to an instruction with respect to intent on that issue? But because there is no intent element here, that authority would not negate any element of the offense. So there is no good faith when he committed the act. If he was relying on the fact that there's a justification-type defense, that's actual authority.  So the lesson here, if we were to affirm, is that nobody should volunteer to the Forest Service except to take a risk that they're going to get prosecuted for doing something. I would respectfully disagree with that, Your Honor, because there is no indication that the defendant was ever asked or authorized to do the acts that he did. So I would suggest that the lesson is, if you volunteer, do your job, and don't go around acting like a law enforcement officer and flagging people down and asking for their identification. That's what the defendant did that caused his conviction for impersonation, because that's what the acting as such was. So this is not a situation where there is some kind of unfairness. And, you know, frankly, there is. And keeping logs of people. Keeping logs of people with, you know, their date of birth, their home address, their driver's license, their personal information. There is absolutely not a shred of evidence that the defendant was ever authorized to do any of those things, or that he ever informed El Guire that he was doing any of those things. So I would suggest that the moral is, if you are going to engage in those acts, you need to fully inform the person who gave you authority and get their specific authorization. You know, there is another variant. But even if you do, the person might not have the authority to authorize you. It's a tricky business. I mean, let's say in fact El Guire had said, you know, take the truck and drive it around, and if you see people, stop them, get their information. You know, told them to do all these things, right? Still would have been no good, right? Well, I think that would get to another area of public authorization which really hasn't been briefed here, which is the sort of estoppel due process official misleading theory, and that's when an official mistakenly gives somebody authorization to do something. I think in that case, you know, there are a number of requirements that have to be met, including obtaining specific authorization to do the act. This Court has held that that also requires absolute authority. I guess at that point you could raise mistaken authority defense, believing you have a, mistakenly believing you have authority. If there is such a defense. I don't know that this circuit recognizes that. The circuit does recognize that. What happens if you run over somebody while he's driving the truck? United States on the hook for that? That's a very good question, Your Honor, and I don't know the answer. I don't think it was explored at trial exactly what the parameters of these volunteer agreements are. So I don't know the answer. This was very important to have real authority when dealing with the government. And the defendant did not have that here. And there was more than sufficient evidence that the defendant engaged in the impersonation acts. There was also more than sufficient evidence that he made a false statement. There was in fact Was there any evidence that he used this information for personal purposes, whether he We did not present any evidence at trial, but that's not required. There are two clauses under Section 912. The first clause under which the defendant was prosecuted just requires that he act as such. The second clause requires that the defendant obtain something of value, and he was not prosecuted under that clause. So there was no evidence that he obtained something of value, but there was more than sufficient evidence from four witnesses who were flagged down that he acted as such. Likewise, with respect to the false statements, there was overwhelming evidence that the defendant who said he did not request or demand ID in fact did. This was not simply a situation where people came up to him and handed over their identification. They gave it All four witnesses testified that they gave him the information he asked for because they believed he was law enforcement. And finally, the severance claim is waived, and if not waived, there was an insufficient showing to require severance. And I see that my time is Okay. Thank you. Concluded. You're out of time. Do you want to take a minute for rebuttal? Can I have one minute for rebuttal? Sure. Thank you. I want to emphasize one thing. It's at the heart of the case as far as we're concerned. It really revolves around this car. The government alleged in the indictment that Mr. Aguirre had the authority to assign vehicles. That's what the government alleged in the indictment. That's what the grand jury found. But then they switched theories and said, no, he tried to prove that he really didn't have it. So our complaint is that Mr. Cooper really didn't get a fair shot with the jury because he should have gotten a jury instruction on his theory of defense. And I've briefed that in the brief and the reply brief, and I would refer you to that. Thank you so much. Okay. Thank you. Our case is arguably submitted.
judges: Kozinski, O'scannlain, Bybee